UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS DEON GREEN,

       Petitioner,

       v.

NICK J. LUDWICK,

       Respondent.[1]

_____/

CASE NO. 2:07-CV-10828
JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Darius Deon Green is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

    2.    On January 19, 2005, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; receiving a stolen vehicle, MICH. COMP. LAWS § 750.535(7); and third degree fleeing and eluding, MICH. COMP. LAWS § 257.602a(3)(a), following a jury trial in the Wayne County Circuit Court.  On February 8, 2005, he was sentenced to concurrent terms of 26-40 years' imprisonment on the murder conviction, 90 days time served on the receiving a stolen vehicle conviction, and 3-5 year' imprisonment on the fleeing and eluding conviction.

---

[1]By Order entered this date, Nick J. Ludwick has been substituted in place of Kenneth McKee as the proper respondent in this action.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.      DEFENDANT SUBMITS THAT HE IS ENTITLED TO REVERSAL OF
        ALL THREE OF HIS CRIMINAL CONVICTIONS AND A NEW TRIAL IN
        LIGHT OF THE CUMULATIVE EFFECT OF THE PROSECUTOR'S
        MISCONDUCT IN DENYING HIM A FAIR TRIAL.

II.     BECAUSE THE ISSUE OF CREDIBILITY WAS "CLOSELY DRAWN",
        THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO *SUA
        SPONTE* GIVE A CAUTIONARY INSTRUCTION ON THE
        UNRELIABILITY OF ACCOMPLICE TESTIMONY WITH REGARD TO
        THE PROSECUTION'S KEY WITNESS, KURTIS BROWN, IN
        VIOLATION OF MR. GREEN'S RIGHT TO A PROPERLY INSTRUCTED
        JURY.

III.    DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
        COUNSEL, WHERE HIS ATTORNEY FAILED TO REQUEST A
        CAUTIONARY INSTRUCTION ON THE UNRELIABILITY OF
        ACCOMPLICE TESTIMONY WITH RESPECT TO THE TESTIMONY OF
        CURTIS BROWN.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Green*, No. 261041, 2006 WL 1626598 (Mich. Ct. App. June 13, 2006) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard

order.  *See People v. Green*, 477 Mich. 972, 725 N.W.2d 29 (2006).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on February 23, 2007.  As grounds for the writ of habeas corpus, he raises the three claims that he

raised in the state courts.

6.      Respondent filed his answer on August 31, 2007.  He contends that petitioner's jury

instruction claim is barred by petitioner's procedural default in the state courts, and that petitioner's

remaining claims are without merit.

7.      Petitioner filed a reply to respondent's answer on January 7, 2008.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a police chase resulting in a collision.  The evidence

adduced at trial was accurately summarized in the prosecutor's brief on appeal:

>       On June 14, 2004, Kurtis Brown was at a house on Gray Street in Detroit when
> defendant, Darius Green, arrived driving a Jeep Cherokee. (1/19, 68).  Brown was
> acquainted with defendant and got into the vehicle.  Brown noticed that the ignition
> of the Jeep was popped out from the steering column but had a key inserted. (1/19,
> 69).  Defendant drove Brown to a corner where they smoked some marijuana.
> Defendant then drove Brown to a friend's house.  When they discovered that the friend
> was not home, defendant and Brown left and started driving back toward Gray Street.
>       At approximately 9:30 p.m., as defendant drove down Pelkey Street, he passed
> a semi-marked vehicle at the intersection of Parkgrove Street. (1/18, 127).  The
> passenger of the vehicle, P.O. Scott Konczal, noticed that the driver's door of the Jeep
> was "punched" or damaged to disable the locking mechanism.  (1/18, 128).
> Recognizing the damage as consistent with a stolen vehicle, Konczal advised his
> partner to follow the Jeep.  When the police vehicle pulled onto Pelkey, the Jeep
> started to slowly accelerate.  Eventually, the Jeep was traveling approximately 40
> miles per hour along the residential street. (1/18, 130).  The Jeep turned onto Greiner
> Street and then to Alcoy Street, continuing to accelerate up to approximately 60 miles
> per hour. (1/18, 131).  The Jeep was also disregarding all traffic signs, including stop
> signs.  The Jeep sped through the intersection of Alcoy and McNichols Road without
> yielding and continued to Gratiot Avenue.  The Jeep then turned onto Gratiot and then
> onto Rochelle Street.  The police continued to follow the Jeep, noticing that the Jeep
> was still disregarding stop signs.  When the Jeep reached the intersection of Rochelle
> and Chalmers, the police officers decided to discontinue the chase because of the
> danger it presented to others. (1/18, 136).  Konczal radioed a description and an
> indication of the direction of the Jeep was traveling to police dispatch.  At the same
> time, P.O. Dean Muczynski and his partner, P.O. Carrie Schultz, were patrolling the
> area of Six Mile road and Chalmers in a fully marked squad car.  The officers heard
> the radio message and saw a Jeep matching the description.  The Jeep turned off
> Rochelle at a speed of approximately 45 miles per hour. (1/18, 158).  The Jeep
> disregarded the stop sign at the intersection.  Muczynski activated the car's lights and
> sirens and followed the Jeep. (1/18, 159).  The Jeep began traveling at a speed of
> approximately 60 miles per hour along Chalmers, weaving in [and] out of traffic and
> crossing into the on-coming lanes. (1/18, 161).  When the Jeep reached the
> intersection of Chalmers and Houston-Whittier it disregarded the traffic signal.
> Muczynski decided to discontinue the chase because it was too dangerous. (1/18,
> 163).  A few moments later, Muczynski heard a loud collision and saw a big cloud of
> dust in the area of Outer Drive and Chalmers.  The Jeep entered the intersection going
> the wrong way and at a speed of approximately 70 miles per hour. (1/19, 8-9).  The

Jeep collided with a red Ford Focus.  The force of the collision ejected the engine and transmission from the Focus.  (1/19, 19).  Muczynski drove his squad car to the intersection in time to see two men running from the Jeep.  The person running from the driver's side of the Jeep was wearing a green Boston Celtics jersey.  (1/19, 168). Konczal arrived at the scene and checked the Focus.  A female was unconscious and badly injured behind the wheel of the Focus.  (1/19, 142).  Konczal also checked the Jeep and saw that the ignition was removed.  (1/19, 146).  Another officer, P.O. Dawn Engel, arrived at the scene and was directed to search for the occupants of the Jeep.

Engel eventually saw defendant standing on the side of a house at 14411 Wilshire Drive.  (1/18, 187).  Defendant matched the description of the driver and was holding a green shirt in his hand.  (1/18, 189).  When Engel stopped the car, defendant dropped the shirt to the ground.  When defendant's demeanor changed from nervous to somewhat more relaxed, Engel detained him and walked him to her squad car. Defendant volunteered to Engel that he was not in the car.  (1/18, 192).  Engel's partner recovered the clothing that defendant dropped.  The clothing consisted of a green Boston Celtics Jersey and a pair of black denim shorts.  (1/18, 194).  Inside the shorts pocket was a vehicle ignition.  (1/18, 196).

The driver of the Focus, Larriese Josey, died from multiple injuries inflicted during the collision.  (1/19, 55).  The victim suffered broken ribs, a broken arm, a torn aorta, a torn pulmonary artery, a torn kidney, and a severed spinal column.

Pl.-Appellee's Br. on Appeal, in *People v. Green*, No. 261041 (Mich. Ct. App.), at 3-5.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v.*

*Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Prosecutorial Misconduct (Claim I)*

Petitioner first contends that he was denied a fair trial by the prosecutor's misconduct at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are

6

isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).

        2.    *Analysis*

Petitioner contends that the prosecutor appealed to the jury's sympathy and sense of civic duty by arguing that the decedent was a hard working mother who was trying to make ends meet, *see* Trial Tr., Vol. II, at 123-24; that petitioner did not stop because "he wanted to keep that car he didn't work for," *id.* at 124-25; that petitioner did not "take responsibility for his actions" and never "expressed one shred of remorse for killing that woman," *id.* at 125; and that the jury should not give petitioner a "break" by finding him guilty of the lesser offense of manslaughter, *see id.* at 136, 149.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Although the prosecutor's language may have been somewhat emotional, the prosecutor did not ask the jury to convict out of sympathy for the victim or appeal to the jury to act as the conscience of the community.  Rather, the prosecutor merely explained the nature of the evidence upon which the jury's decision had to be based.  Further, even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair

trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc).

Further, as the Michigan Court of Appeals explained, even if the comments were improper, they were not prejudicial in light of the evidence presented at trial. There was no dispute at trial regarding the circumstances of the chase and the resulting crash. The only issue was petitioner's identity as the driver. As the court of appeals explained, however, there was "overwhelming evidence that he was the driver." *Green*, 2006 WL 1626598, at \*4, slip op. at 5. Specifically: (1) Brown testified that petitioner was the driver and that he was wearing a Celtics jersey and blue jean shorts; (2) other witnesses testified that the driver was wearing a Celtics jersey and jean shorts; (3) petitioner was arrested two blocks from the accident and was seen discarding a Celtics jersey and jean shorts as the police approached; (4) petitioner asked the officers to get his clothes (*i.e.*, the jersey and shorts) off the hood; (5) the shorts had an ignition cylinder in the pocket, and the stolen Jeep was missing its ignition cylinder; and (6) Brown suffered a significant cut on his right hand whereas petitioner had no significant injuries, and there was blood found on the passenger door of the Jeep but not on the driver's side of the car. In light of this evidence, coupled with the judge's instruction that the jury should consider only the evidence in the case and that counsel's arguments were not evidence, any improper comments by the prosecutor were not sufficiently prejudicial to deprive petitioner of a fair trial. *See Bentley v. Scully*, 41 F.3d 818, 824-25 (2d Cir. 1994). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Accomplice Witness Instruction (Claim II)*

Petitioner next contends that he was denied a fair trial by the trial court's failure to give *sua sponte* an instruction on evaluating accomplice testimony. The Court should conclude that petitioner

is not entitled to habeas relief on this claim.

      1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

      2.     *Analysis*

Petitioner first contends that the trial court should have given an instruction that accomplice testimony should be viewed with extreme caution, on the theory that Brown was an accomplice to the theft of the automobile and flight from the police. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, the court of appeals concluded that an accomplice witness instruction was not appropriate because there was no evidence that Brown was an accomplice to the crime. *See Green*,

2006 WL 1626598, at * 5, slip op. at 6.  This determination was reasonable.  Brown himself testified that petitioner picked him up in the stolen vehicle, that he did not know that the vehicle had been stolen.  Although petitioner attempted to show that Brown was the driver through cross-examination, Brown denied this, and there was no other evidence presented to show that Brown was involved in the theft of the vehicle or the decision to flee from the police.

More fundamentally, the federal courts have repeatedly held that a criminal defendant has no constitutional right to an accomplice witness instruction, and thus the failure of a state court to give such an instruction does not provide a basis for granting habeas relief.  *See Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000); *Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir. 1995); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985); *Grant v. Rivers*, 920 F. Supp. 769, 783 (E.D. Mich. 1996) (Gadola, J.); *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y.), *aff'd*, 948 F.2d 1278 (2d Cir. 1991).  This is particularly true where, as here, the trial court did give a general instruction that the jury is to determine the credibility of all the witnesses.  *See Kappos*, 54 F.3d at 367.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Ineffective Assistance of Counsel (Claim III)*

Finally, petitioner contends that his counsel was ineffective for failing to request an accomplice witness instruction.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protects the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at

687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is

no reason for a court deciding an ineffective assistance claim . . . to address both components of the

inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that

counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689;

*see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that

counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695.

2.      *Analysis*

Petitioner contends that counsel was ineffective for failing to request an accomplice witness

instruction. This claim fails, for two reasons.

First, as noted above, the Michigan Court of Appeals determined that an accomplice witness

instruction was not warranted under state law because there was no evidence that Brown was an

accomplice to the crimes committed by petitioner. In analyzing petitioner's ineffective assistance of

counsel claims, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F.

Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Counsel cannot be deemed ineffective for failing to request an instruction which was not appropriate under state law. *See Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001).

Second, petitioner cannot show that he was prejudiced by the absence of an accomplice witness instruction. Defense counsel extensively cross-examined Brown and challenged his credibility during closing argument, and the trial court gave a general instruction on witness credibility. Thus, "[a]ny problems with Brown's credibility were plainly apparent to the jury," *Green*, 2006 WL 1626598, at *5, slip op. at 6, and the court properly instructed the jury on how to evaluate the credibility of the witnesses. In these circumstances, there is not a reasonable probability that the result of the proceeding would have been different had counsel requested and the court given an accomplice witness instruction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of

any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 4/14/09


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on April 14, 2009.
>
> s/Eddrey Butts
> Case Manager